## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **No. 1:18-cr-00098-JAW** |
| | ) | |
| **LUIS PADILLA** | ) | |

### ORDER ON DEFENDANT'S MOTION TO DISMISS

A defendant raises a significant double jeopardy issue based on the Government's successful prosecution of the defendant in one district charging a narrow drug trafficking conspiracy and its indictment of the defendant in another district for what appears to be the same, but much broader drug trafficking conspiracy. As the motion and opposition leave important questions unaddressed and unanswered, the Court dismisses the motion to dismiss, but without prejudice, so that the defendant may reinitiate the motion with a more fulsome record and more complete briefing, should the defendant choose to do so.

## I.     BACKGROUND

### A.     The District of Maine Charge

On July 18, 2018, a federal grand jury indicted Luis Padilla along with several other defendants for engaging in a drug trafficking conspiracy in violation of federal criminal law.  *Indictment* (ECF No. 2) (*Me. Indictment*).  The indictment reads:

### <u>COUNT ONE</u>

(Conspiracy to Distribute and to Possess With Intent to Distribute Controlled Substances)

From on or about January 1, 2015 through on or about September 1, 2017, the exact dates being unknown to the Grand Jury, in the District of Maine and elsewhere, the defendants

**LUIS PADILLA, a/k/a "Twin,"**
**DAMIAN PERRY, a/k/a "Primo,"**
**LUIS HERNANDEZ, a/k/a "Flacco,"**
**JASON MANNIX, a/k/a "Boston,"**
**SAMMANTHA JOHNSON, a/k/a "Sam,"**
**MALCOLM GREENLAW, a/k/a "Mac,"**
**And**
**ERICA OLIVEIRA**

and others known and unknown, knowingly and intentionally conspired together and with one another, to distribute and possess with the intent to distribute, controlled substances including a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

## QUANTITY OF HEROIN AND COCAINE BASE INVOLVED IN THE CONSPIRACY

With respect to the defendants **LUIS PADILLA, a/k/a "Twin,"** **DAMIAN PERRY, a/k/a "Primo,"** their conduct as members of the conspiracy charged in Count One, which includes the reasonably

foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21, United States Code, Section 841(b)(I)(A)(i) and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A)(iii).

With respect to the defendants, **LUIS HERNANDEZ, a/k/a "Flacco," JASON MANNIX, a/k/a "Boston," SAMMANTHA JOHNSON, a/k/a "Sam," MALCOLM GREENLAW, a/k/a "Mac," and ERICA OLIVEIRA** their conduct as members of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance and a quantity of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C), all in violation of Title 21, United States Code, Section 846.

*Id.* at 1-2.[1]

---

[1] The District of Maine indictment contained a count two, but it involved one of the other defendants. *Me. Indictment* at 3.

## B.     The Connecticut Charge

On December 7, 2016, a federal grand jury in the District of Connecticut issued a three-count indictment against Mr. Padilla, including Count One. *Gov't's Obj. to Def.'s Mot. to Dismiss* (ECF No. 158) (*Gov't's Opp'n*), Attach. 1, *Indictment* (*Conn. Indictment*). Count One reads:

COUNT ONE
(Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances)

1. From approximately October 1, 2016 to on or about October 12, 2016, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY, and others known and unknown to the Grand Jury, knowingly and intentionally conspired together and with one another, to possess with intent to distribute, and to distribute, controlled substances, namely a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture and substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1).

QUANTITY OF COCAINE BASE INVOLVED IN THE CONSPIRACY

2. Defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knew and reasonably should have foreseen from their own conduct and that of other members of the narcotics conspiracy charged in Count One that the conspiracy involved 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

### QUANTITY OF HEROIN INVOLVED IN THE CONSPIRACY

3. Defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knew and reasonably should have foreseen from their own conduct and that of other members of the narcotics conspiracy charged in Count One that the conspiracy involved a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

### COUNT TWO
(Possession with Intent to Distribute 28 Grams or More of Cocaine Base)

4. On or about October 12, 2016, in the District of Connecticut, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knowingly and intentionally possessed with intent to distribute 28 grams of more of a mixture and

substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2.

COUNT THREE<br>(Possession with Intent to Distribute Heroin)

5. On or about October 12, 2016, in the District of Connecticut, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

*Id.* at 1-3.

To his motion, Mr. Padilla attached a presentence investigation report (PSR) that confirmed, among other things, that on July 25, 2017, he pleaded guilty to Count One of a three-count federal indictment. *Def.'s Mot. to Dismiss Double Jeopardy*, Attach. 2, *Def.'s Presentence Report* at 3 (ECF No. 145) (PSR). On March 2, 2018, the district court in the District of Connecticut sentenced Mr. Padilla for his count one conviction to seventy-eight months of incarceration, five years of supervised release, no fine, and a $100 special assessment. *Id.* Attach. 5 (*J.*).

## II.    THE PARTIES' POSITIONS

### A. Luis Padilla's Motion to Dismiss

On October 16, 2018, Mr. Padilla filed a motion to dismiss the indictment on double jeopardy grounds. *Def.'s Mot. to Dismiss Double Jeopardy* (ECF No. 145) (*Def.'s Mot.*). Mr. Padilla states that he previously pleaded guilty to engaging in a conspiracy to distribute and possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 in the United States District Court for the District of Connecticut. *Id.* at 2. Mr. Padilla says that the First Circuit identified five factors to determine whether two charged conspiracies are the same offense: (1) the time during which the activities occurred; (2) the persons involved; (3) the places involved; (4) whether the same evidence was used to prove the two conspiracies; and (5) whether the same statutory provision was involved in both conspiracies. *Id.* at 2 (citing *United States v. Laguna-Estela*, 394 F.3d 54, 57 (1st Cir. 2005) (citing *United States v. Gomez-Pabon*, 911 F.2d 847, 860 (1st Cir. 1990)). As Mr. Padilla sees it, the time period, the persons involved, the places involved, the evidence used, and the statutory provisions "support a finding of double jeopardy" and he asks that the Court dismiss the district of Maine indictment. *Id.* at 3-5.

### B. The Government's Opposition

The Government sees things very differently. It says that the district of Maine indictment and the district of Connecticut indictment "concern different time periods, different participants, different locales, different evidence, and different crimes." *Gov't's Opp'n* at 1. The Government points out that on July 25, 2017, Mr. Padilla

entered into a plea agreement with the United States Attorney's Office in Connecticut

that expressly mentioned the possibility of federal charges in Maine:

> The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant understands that he may face federal charges in the District of Maine for conduct that goes beyond the time period charged in this Indictment.

*Id.* Attach. 2, *Letter from Rahul Kale, Ass't U.S. Att'y to Richard S. Cramer, Esq.* at 7

(Jul. 25, 2017) (*Plea Agreement*). In addition, the letter Mr. Padilla and his

Connecticut defense counsel signed states:

> The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conspiracy to possess with intent to distribute both heroin and over 28 grams of cocaine base in early October 2016, which forms the basis of the indictment in this case.

*Id.* at 8.

## III. LEGAL BACKDROP

### A. Motions to Dismiss an Indictment: General Rules

"[D]ismissing an indictment is an extraordinary step." *United States v. Li*, 206

F.3d 56, 62 (1st Cir. 2000) (quoting *United States v. Stokes*, 124 F.3d 39, 44 (1st Cir.

1997)). The Court is mindful that it "should exercise its authority to dismiss

cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental

role of the grand jury.'" *United States v. Thomas*, 519 F. Supp. 2d 141, 143-44 (D. Me.

2007) (quoting *Whitehouse v. United States Dist. Court*, 53 F.3d 1349, 1360 (1st Cir.

1995)). For this reason, unlike a complaint initiating a civil action, "an indictment is

not generally subject to dispositive motion practice." *United States v. Ayotte*, 841 F.

Supp. 2d 398, 403 (D. Me. 2012) (quoting *United States v. Poulin*, 645 F. Supp. 2d 17, 22 (D. Me. 2009)).  Dismissal of an indictment by a federal court "is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse*, 53 F.3d at 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).

**B.  The Law of Double Jeopardy**

The Fifth Amendment of the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., AM. V.  The double jeopardy clause "protects against multiple punishments for the same offense." *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012) (quoting *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011)).  The seminal double jeopardy case from the United States Supreme Court is *Blockburger v. United States*, 284 U.S. 299 (1932).  In *Blockburger*, the Supreme Court described the proper analysis: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304; *United States v. Stefanidakis*, 678 F.3d 96, (1st Cir. 2012) ("*Blockburger*. . . prohibits charging the same conduct under two separate statutes unless each statute requires proof of a fact that that other does not").

"In practice, the same evidence test is usually modified when applied to conspiracy cases." *United States v. Garcia-Rosa*, 876 F.2d 209, 228 (1st Cir. 1989). This is because of the "ease with which prosecutors can draft indictments that allege what may appear to be separate conspiracies but may actually be parts of an overall

conspiracy." *Id.* (quoting *United States v. Abbamonte*, 759 F.2d 1065, 1068 (2d Cir. 1985)). To test double jeopardy concerns for conspiracies, as noted earlier, the First Circuit adopted a five-factor test to decide whether two charged conspiracies are the same for double jeopardy purposes: (1) time involved, (2) persons involved, (3) places involved, (4) same evidence, and (5) same statutory provisions. *Laguna-Estela*, 394 F.3d at 57; *Gomez-Pabon*, 911 F.2d at 911 F.2d 860; *Garcia-Rosa*, 876 F.2d at 228. "A defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." *Laguna-Estela*, 394 F.3d at 56 (quoting *United States v. Booth*, 673 F.2d 27, 30-30 (1st Cir. 1992)).

## IV. DISCUSSION

In the Court's view, Mr. Padilla sustained his prima facie burden to establish a non-frivolous double jeopardy claim.

### A. The Defendant's Prima Facie Burden

#### 1. Timing

The time of the Connecticut indictment fits within the time alleged in the Maine indictment: the Connecticut indictment alleges that the conspiracy took place from October 1, 2016 to October 12, 2016 and the Maine indictment alleges that the conspiracy took place from January 1, 2015 through September 1, 2017.

#### 2. People

Two of the three people indicted in Connecticut were indicted in Maine.

10

### 3.     Place

The Connecticut and Maine indictments naturally allege that the conspiracies took place in their respective districts, but they also allege that the conspiracies took place "elsewhere."  In the Connecticut Assistant United States Attorney (AUSA)'s sentencing memorandum, he wrote:

> In 2016, an agent of the Drug Enforcement Agency ("DEA") learned from a confidential source that Waterbury residents Damien Perry and Luis Padilla were part of a loose organization that transported narcotics, usually oxycodone, heroin and cocaine base, from Waterbury, Connecticut to Eastern Maine, where the narcotics were sold for far larger amounts of money than they could be sold for in Connecticut.  The District of Maine has an ongoing investigation into this Waterbury-Eastern Maine drug trafficking.

*Def.'s Mot.* Attach. 1, *Gov't's Sentencing Mem.* at 1 (*Gov't's Sentencing Mem.*).  The AUSA's memorandum reveals that on October 11, 2016, the third person named in the Connecticut indictment, Cecil Stanley, was operating a motor vehicle with a Maine registration, that Mr. Padilla had sent Mr. Stanley a text on October 9, 2016, asking Mr. Stanley if he had sold all the crack cocaine, that Mr. Padilla asked Mr. Stanley to get resupplied by coming to Connecticut, and that on October 10, 2016, Mr. Padilla had sent Mr. Stanley another text message asking if he was coming and confirming that he had received $1,500 in a wire transfer.  *Id.* at 1-3.  The AUSA finally discussed the fact that an agent observed Mr. Padilla stuff a package into the rear passenger's seat of Mr. Stanley's Chevrolet Blazer and that after law enforcement stopped Mr. Stanley's Blazer, they located sixty grams of heroin and one hundred grams of crack cocaine.  *Id.* at 2-3.  From this argument, the Court concludes that the primary "elsewhere" in the Connecticut indictment was Maine.  As the PSR

indicates that Mr. Padilla has been a resident of Waterbury, Connecticut since 2009, *PSR* at 12, the Court concludes that the primary "elsewhere" in the Maine indictment is Connecticut.

This conclusion is consistent with the rest of the Connecticut AUSA's description of a Connecticut-based conspiracy distributing drugs in Maine:

> [The defendant] packaged narcotics to be transported from his base in Waterbury to Eastern Maine. His intent was to profit from the misery of the struggling communities of Eastern Maine. Padilla recruited a member of a Native American tribe as his coconspirator in order to ensure that he could deliver the poison to the reservation, into which Padilla, as a non-member, was not allowed.

*Gov't's Sentencing Mem.* at 7-8.

From the allegations in the indictments as explicated by the Connecticut AUSA in the sentencing memorandum, there is sufficient evidence that the Connecticut indictment charged the Connecticut side of a drug trafficking conspiracy where the illegal drugs were obtained in Connecticut and shipped to Maine to be sold there, and the Maine indictment charges the Maine side of that same conspiracy.

### 4.    Evidence

The AUSA's sentencing memorandum sets forth the evidence that substantiates the Connecticut indictment. *Id.* at 1-3, 7-8. Essentially, the Connecticut indictment charged a single event, namely a transfer of illegal drugs from Mr. Padilla to Mr. Stanley, on October 12, 2016 but alleged that the event was part of an ongoing drug trafficking conspiracy involving the packaging, transportation, and sale of narcotics from Waterbury, Connecticut to Eastern Maine.

This is sufficient to sustain Mr. Padilla's prima facie burden.

### 5. Charging Statutes

Both the Connecticut and Maine cases charge drug conspiracies that violated 21 U.S.C. § 846. This is sufficient to sustain Mr. Padilla's prima facie burden.

### 6. Conclusion: Prima Facie Burden

Applying the five First Circuit factors to this case, the Court concludes that Mr. Padilla sustained his prima facie burden to establish a non-frivolous claim of double jeopardy arising from the Connecticut and Maine indictments.

## B. The Government's Burden

Once a defendant has sustained a prima facie burden of presenting evidence, the burden then shifts to the Government to prove by a preponderance of the evidence that the indictments charge separate offenses. *Laguna-Estela*, 394 F.3d at 56. The Court turns to the five First Circuit factors to determine whether the Government has sustained its burden.

### 1. Timing

Although both charging instruments alleged that the dates were approximate, the Connecticut indictment alleged a conspiracy that lasted from about October 1 to about October 11, 2016, a period of only eleven days; the Maine indictment charged a conspiracy that lasted from about January 1, 2015 through about September 1, 2017, a period of two years and eight months. The overlap of the two conspiracies was only eleven days. *Laguna-Estela*, 394 F.3d at 57 ("[T]he time of the two conspiracies overlapped by only two months"). At the same time, an overlap in time

"tends to support the existence of one continuous conspiracy." *Gomez-Pabon*, 911 F.2d at 860.

In *Garcia-Rosa*, the defendant pleaded guilty to one conspiracy (the "narrow" conspiracy) which took place over a one-week period and he was later indicted and convicted of another conspiracy (the "broad" conspiracy) that took place over twenty-three months. 876 F.2d at 226-28. Noting that "[t]he conspiracy to which Soto pled guilty (the "narrow" conspiracy) occurred during the twenty-three month period during which the conspiracy charged in count 1 (the "broad" conspiracy) existed," the First Circuit concluded that "[t]his factor favors the defendant's claim." *Id.* at 228. The circumstances in this case seem remarkably similar on this point to *Garcia-Rosa*, and this Court therefore follows the First Circuit's lead and concludes that the timing of the two conspiracies alleged in the Connecticut and Maine indictments favors Mr. Padilla.

### 2. People

The Connecticut indictment charged three people: Mr. Padilla, Mr. Perry, and Mr. Stanley; the Maine indictment charges seven people: Mr. Padilla, Mr. Perry, Luis Hernandez, Jason Mannix, Sammantha Johnson, Malcolm Greenlaw and Erica Oliveira. In *Garcia-Rosa*, the First Circuit observed that only two people had been charged in the narrow conspiracy and the same two people were also charged in the broader conspiracy, except in the broader conspiracy twenty-nine other persons were charged as well. 876 F.2d at 228. The *Garcia-Rosa* Court said that a man named Pedro Soto-Alvarez was "a central character in both conspiracies." *Id.* The First

Circuit wrote that "[t]he presence of other unknown conspirators in the narrow conspiracy and named conspirators in the broad conspiracy does not undercut the strong suggestion that the narrow conspiracy was merely a 'portion' of the broad conspiracy." *Id.*

By contrast, in *Laguna-Estela*, the First Circuit addressed a Florida case, where fifteen defendants were indicted, and a Puerto Rican case where ten defendants were indicted, and "only Mr. Laguna is common to both." 394 F.3d at 57. It concluded that the "persons involved in the two conspiracies are substantially different." *Id.* The *Laguna-Estela* case cited *Booth* where "ten common defendants of the twenty-four charged in a Maine indictment and nineteen charged in the Florida indictment was insufficient to find that the persons in the two conspiracies were substantially similar." *Id.* (citing *Booth*, 673 F.2d at 29).

The Court views this factor as mixed. Here, there are two, not one, people common to both indictments. The Connecticut indictment charges one person who was not charged in Maine and the Maine indictment charges five people who were not charged in Connecticut. It may be that Mr. Padilla turns out to have been the "central character in both conspiracies" or it may be that he had a more significant role in one and a less significant role in the other.

### 3.    Places Involved

As indicated earlier, both indictments allege that the conspiracies operated out of both Waterbury, Connecticut and eastern Maine. For both conspiracies, the source of the drugs was in Connecticut and the drugs were being transported and sold in

eastern Maine. The Connecticut indictment alleges that the conspiracy took place in Connecticut and elsewhere, and the Maine indictment alleges that the conspiracy took place in Maine and elsewhere. In *Booth*, the First Circuit stated that "[w]e find too attenuated appellants' claim that the Florida conspiracy encompassed the Maine conspiracy because the Florida indictment charged a conspiracy in the Southern District of Florida "an elsewhere." 673 F.2d at 29-30. But here, the evidence before the Court establishes that both conspiracies took place both in Waterbury, Connecticut as a home base and in eastern Maine as a distribution point. This factor favors Mr. Padilla.

### 4. Evidence

#### a. The Connecticut Charge

##### 1. The Rule 11

The evidence of what occurred in the Connecticut crime is a matter of record. In the Rule 11, Mr. Padilla acknowledged that there were two types of controlled substances, heroin and cocaine, involved in the Connecticut conspiracy. *Gov't's Opp'n*, Attach. 3, *United States v. Padilla*, 3:16-cr-00205-VLB-2, *Tr. of Change of Plea Hr'g* 6:15-19 (*Plea Tr.*). When asked what in his own words constituted the offense to which he was pleading guilty, Mr. Padilla stated:

> I actually conspired with two other individuals to put something in somebody's car, which would be cocaine and heroin.

*Id.* 21:16-18.  He named the two other individuals as Cecil Stanley and Damian

Perry.[2]  *Id.* 22:19-20.  Mr. Padilla stated that he knew that the drugs were "going to

be transported someplace," but he did not identify Maine as the destination.  *Id.* 23:2-

4.  Furthermore, the district judge informed Mr. Padilla:

> THE COURT: Okay, and you understand that if you plead guilty to this
> offense - - I know it is alleged to have been committed here in the state
> of Connecticut.  I don't know if you have any other state or other charges
> arising out of this conduct, but your entering into the plea agreement
> with the United States Attorney would only satisfy your federal criminal
> liability here in the district of Connecticut.
>
> THE DEFENDANT: Yes.

*Id.* 17:13-20.

### 2.      The Presentence Report

When describing the offense conduct, the PSR extensively discusses a

conspiracy based in Waterbury, Connecticut to distribute heroin in Maine.  *PSR* ¶ 7.

The PSR states that the "Waterbury group sold heroin to numerous person in

northeast Maine from [residents'] homes, returned to Waterbury two to three times

per week with money and guns procured from the sale of heroin, and then returned

to Maine with more heroin."  *Id.*  However, except for Mr. Perry, none of the

individuals mentioned in the PSR was indicted in Maine.

### 3.      The Government's Sentencing Memorandum

The Court already reviewed the Government's sentencing memorandum in

which the AUSA in Connecticut extensively described Mr. Padilla's participation in

---

[2]      The Connecticut documents spell Mr. Perry's first name as Damien; the Maine documents spell
his first name as Damian.  The Court does not know which is correct but assumes Mr. Perry is the
same person in both the Connecticut and Maine indictments.

the broader conspiracy in which drugs were obtained and packaged in Connecticut and transported and distributed in eastern Maine, arguments entirely consistent with the broader conspiracy charged in Maine.

### 4.    The Sentencing Hearings

Mr. Padilla first came for a sentencing hearing in United States District Court in New Haven, Connecticut on January 3, 2018. *Gov't's Opp'n*, Attach. 3, *United States v. Padilla*, 3:16-cr-00205-VLB-2, *Tr. of Sentencing Hr'g* (*Sentencing Tr.*). At the outset of the sentencing hearing, the Court and the AUSA engaged in the following colloquy:

> MR. KALE: We have presented in our sentencing memorandum the Government's position. We believe that Mr. Padilla committed a serious crime. It's - - we are focused on the very limited instance of - - charged in the indictment and not seeking to take anything away from the District of Maine's investigation into Mr. Padilla. So I just wanted to make that clear to start.
>
> THE COURT: I don't understand the meaning of that.
>
> MR. KALE: Sure.
>
> THE COURT: What is it you're saying?
>
> MR. KALE: Oh, I apologize, Your Honor.
> In the indictment, we charged a limited period from early December of 2016 until the date Mr. Padilla was - - sorry, October - - sorry, early October 2016 until October 12th, 2016.
>
> THE COURT: Yes.
>
> MR. KALE: And that is what's been charged in the indictment. That's what Mr. Padilla [pled] guilty to. The District of Maine, from what I understand, has a longer-term investigation into Mr. Padilla trafficking narcotics to Maine for some years, actually. And so I just wanted to put out that we're not asking the Court to impose sentence on anything that happened in Maine prior to October of 2016.

THE COURT: Um-hum.

MR. KALE: Should Maine choose to bring charges or be delivering charges and should they convict him, that will be dealt with in Maine. I was - - that's the only point I was making, Your Honor.

THE COURT: Understood.

*Id.* 4:13-5:16. However, the AUSA then began to discuss Mr. Padilla's dealing drugs in Maine:

> Turning to Mr. Padilla's conduct, though, on this particular instance, it is egregious conduct in that he was taking heroin and crack cocaine up to Maine in order to make pure profit. It's interesting that Mr. Padilla talks about his girlfriend, who is up in Maine, and says - - kind of dismisses her as not being clean and yet he's feeding the same addiction that's completely - - up in Maine that he's denigrating at the same time.

*Id.* 5:17-24. The AUSA went on to say:

> So I apologize, Your Honor; I'm sort of - - from what Maine told me, I'm walking a thin line. I don't want to go into anything that they're investigating. But his conduct here is incredibly serious, and we think a guideline sentence in this case is warranted.

*Id.* 6:10-14. After these arguments were made, another issue came up that caused the Court to adjourn the sentencing hearing and reset it. *Id.* 16:18-24.

The second sentencing hearing was held on January 30, 2018. But the Court has not been provided with a copy of that transcript. The Court has a copy of the sentencing judgment in which Mr. Padilla was sentenced on March 2, 2018 to seventy-eight months of incarceration. *Gov't's Opp'n*, Attach. 3, *United States v. Padilla*, 3:16-cr-00205-VLB-2, Attach, 5, *J* at 1.

### a.    The Maine Charge

The Court knows less about the evidence that the Government would introduce to prosecute Mr. Padilla for the charges in the Maine indictment. However, the Court accepts the Government's representations for purposes of ruling on this motion to dismiss. The Government writes:

> Counsel has been advised that the evidence of the defendant's involvement in the Maine drug conspiracy consists largely of law enforcement and cooperator testimony, results of search warrant executions, physical surveillance, controlled buys (including a buy from the defendant himself), telephone records, among other evidence. Significantly, none of the Maine cooperating witnesses and cooperating defendants testified in connection with the bringing of the charges in Connecticut.

*Gov't's Opp'n* at 13-14. At the same time, the Government acknowledged that Mr. Padilla has not received the Jencks Act material in the Maine case. *Id.* at 14.

### b. Discussion

For purposes of this motion to dismiss, the Court accepts the Government's representation that none of the Maine cooperating witnesses and cooperating defendants testified in connection with the bringing of the charges in Connecticut. This is a strong factor in favor of the Government and would carry the day for the Government under *Blockburger*. Even so, as the Connecticut documents confirm, the Connecticut-Maine conspiracy, which has been charged in Maine, formed the explicit background of the Connecticut charge, was detailed in the Connecticut PSR, and argued by the Connecticut AUSA during the first sentencing hearing. With what it now has, the Court credits this factor as being in favor of the Government, but as later discussed, the state of the record is unsatisfactory.

### 5. The Statutory Charges

In its opposition, the Government argues that even though all these crimes, both in Connecticut and Maine, were charged under 21 U.S.C. § 841, because the crimes are charged under different subsections of § 841, Mr. Padilla has legally been charged with different crimes. *Gov't's Opp'n* at 15-16. The Government acknowledges that in Count One, the Connecticut indictment charged a conspiracy to distribute and to possess with the intent to distribute controlled substances, a violation of 21 U.S.C. § 841(a), but that the Connecticut indictment specifically charged that the narcotics conspiracy involved 28 grams or more of crack cocaine, a violation of 21 U.S.C. § 841(b)(1)(B), and an unspecified amount of heroin, a violation of 21 U.S.C. § 841(b)(1)(C). *Id.* For the crack cocaine charge, the penalties include a minimum of five years of incarceration and a maximum of forty years of incarceration. 21 U.S.C. § 841(b)(1)(B). For the heroin charge, the penalties include a maximum of twenty years of incarceration. 21 U.S.C. § 841(b)(1)(C).

Like the Connecticut indictment, the Maine indictment charged Mr. Padilla with engaging in a conspiracy to distribute and to possess with the intent to distribute controlled substances, a general violation of 21 U.S.C. § 841(a)(1). The Maine indictment also charged that the narcotics conspiracy involved at least one kilogram of heroin, a violation of 21 U.S.C. § 841(b)(I)(A)(i) and at least 280 grams of cocaine base, a violation of 21 U.S.C. § 841(b)(1)(A)(iii). Both the heroin and crack cocaine allegations subject Mr. Padilla to at least ten years of incarceration and a potential maximum term of life. 21 U.S.C. § 841(b)(1)(A).

Under First Circuit law, following the lead of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), a jury must find "beyond a reasonable doubt any drug quantity that triggers a mandatory-minimum and a statutory-maximum sentence under 21 U.S.C. § 841, whose multiple sections set out different crimes." *United States v. Ramos-Gonzalez*, 775 F.3d 483, 508 (1st Cir. 2015) (emphasis supplied); *United States v. Pizarro*, 772 F.3d 284, 292 (1st Cir. 2014) ("Under *Apprendi* and *Alleyne*, each of the subsections of 21 U.S.C. § 841(b)(1), with its associated drug quantities and sentencing ranges, is a separate crime").

The Government has a point. Even if the charges had been the same, this would not preclude the rejection of a double jeopardy claim. *Laguna-Estela*, 394 F.3d at 58; *Booth*, 673 F.2d at 30; *United States v. Chagra*, 653 F.2d 26, 29 (1st Cir. 1981). However, in *Blockburger*, the Supreme Court made it clear that the prohibition against double jeopardy "prohibits charging the same conduct under two separate statutes unless each statute requires proof of a fact that the other does not." *See Stefanidakis*, 678 F.3d at 100 (citing *Blockburger*, 284 U.S. at 304). Where a defendant is charged with discrete crimes, there is generally no double jeopardy violation. *Id.* ("[A]ppellant committed, was convicted of, and was sentenced for five discrete crimes. Thus, there is no double jeopardy violation evidence on the record") (citations omitted).

Even so, the Court is not entirely convinced that this factor weighs as heavily in favor of the Government as the Government professes. This is because of the

unique nature of multiple conspiracy allegations. Assuming that a defendant was involved in a grand drug trafficking conspiracy, if the government sliced off a small part of that conspiracy and indicted a defendant, the drug quantities would invariably be lower than the drug quantities in the broader conspiracy; the government could charge the narrow conspiracy under one subsection of § 841, one that provided less draconian penalties, and charge the broader conspiracy under another subsection of § 841, one that provided more severe penalties. The government could claim that because the crimes were different, double jeopardy concerns did not apply. Yet, what the government would have done is sliced up different aspects of one crime, the grand conspiracy, and charged multiple smaller crimes. If so, the double jeopardy clause's protection "against multiple punishments for the same offense" is eviscerated. *Chiaradio*, 684 F.3d at 272.

For purposes of this motion, the Court accedes to the Government's theory. But it notes that Mr. Padilla did not file a reply to the Government's opposition, so the Court has not had the benefit of a defense counterargument. The Court is uneasy about relying too much in this context on the Government's decision to charge the conspiracy under separate sections of § 841.

Analyzing the five factors in this record as directed by the First Circuit, the Court concludes that the Government sustained its burden of proof and the Court dismisses Mr. Padilla's motion without prejudice.

But the Court expresses disquiet. The record here is unsatisfactory. The Connecticut documentation confirms that in October 2016, Mr. Padilla was involved

in a drug trafficking conspiracy, obtaining and packaging heroin and crack cocaine in Waterbury, Connecticut, transporting those drugs to eastern Maine, and transporting the proceeds back to Connecticut to purchase more narcotics to supply the addicts of eastern Maine. *Gov't's Sentencing Mem.* at 1-3. If the October 2016 crime had involved solely a transfer from Mr. Padilla to someone from Connecticut, a better argument could be made that the two crimes were unrelated.

But the circumstances underlying Mr. Padilla's Connecticut arrest and the Connecticut charge and sentencing sound like his actions were in furtherance of the broader Waterbury to Maine drug trafficking conspiracy, which is what has been charged in Maine. This is particularly true since the recipient of the drugs in October 2016, Cecil Stanley, was a resident of eastern Maine, had been involved in selling crack cocaine in eastern Maine for Mr. Padilla, and had traveled to Waterbury to obtain a new supply of narcotics. *Id.* It seems that for whatever reason, the Connecticut branch of the United States Attorney's Office decided to prosecute one deal within the Connecticut to Maine drug trafficking conspiracy and that the Maine branch of the United States Attorney's Office decided to prosecute the conspiracy as a whole. The Court has some doubt that the Government can properly slice up one large conspiracy into separate little conspiracies, and then charge one transaction in one district as a conspiracy and charge the whole in another. Nevertheless, for additional reasons, the Court has concluded that the better course is to dismiss the motion and allow Mr. Padilla to raise it again, should he elect to do so.

**C.      The Impact of the Plea Agreement and Connecticut Sentencing**

One unique aspect of this motion is the impact of the Connecticut plea agreement.  The record confirms that Mr. Padilla entered into a plea agreement in Connecticut that expressly refers to the ongoing Maine investigation and mentions that he "may face federal charges in the District of Maine for conduct that goes beyond the time period charged in this Indictment." *Plea Agreement* at 7.  Furthermore, in the plea agreement, Mr. Padilla acknowledged that his guilty plea "will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conspiracy to possess with the intent to distribute both heroin and over 28 grams of cocaine base in early October 2016, which forms the basis of the indictment in this case." *Id.* at 8.  Moreover, the district judge in Connecticut carefully reviewed this aspect of the plea agreement with Mr. Padilla and he confirmed that he understood that by pleading guilty, he was resolving only the Connecticut charge. *Plea Tr.* 17:13-20.

From the Court's perspective, by challenging the Maine indictment on double jeopardy grounds, Mr. Padilla is skirting close to reneging on the terms of his plea agreement in Connecticut because he pleaded guilty with the express understanding that he could be charged in Maine for conduct that went beyond his October 2016 deal in Connecticut.  It is unclear whether in signing the plea agreement, Mr. Padilla waived his right to challenge on double jeopardy grounds an indictment arising out of an investigation he acknowledged was ongoing and could potentially result in federal charges in Maine.  The First Circuit has suggested that a defendant can waive a double jeopardy argument by entering into a plea agreement. *See Stefanidakis*, 678

F.3d at 98 ("The appellant's effort to spin his double jeopardy claim as a claim of sentencing error is a thinly veiled attempt to evade the plea agreement's waiver-of-appeal provision"). Under *Stefanidakis*, a double jeopardy claim may be forfeited or waived. *Id.* at 99.

A second issue is whether the Connecticut AUSA's sentencing argument breached that part of the plea agreement by urging the district court to consider the broader implications of the Maine conspiracy in his sentencing memorandum and in his presentation on January 3, 2018. *Gov't's Sentencing Mem.* at 7-8; *Sentencing Tr.* 4:13-5:24. At one point, the AUSA clearly told the district judge that he was not asking the judge to consider anything that occurred in Maine because of the ongoing Maine investigation, but then the AUSA seemed to argue to the judge exactly what he said he could not argue. *Id.* The AUSA acknowledged that he was walking a "thin line." *Id.* 6:10-14. The question is whether it was crossed. With that said, the Court does not have the final sentencing transcript of March 2, 2018 when the Connecticut district court sentenced Mr. Padilla and cannot guess whether the broader conspiracy arguments that were presented and yet not presented on January 3, 2018 were clarified.

Neither party directly addressed the impact of the plea agreement on Mr. Padilla's double jeopardy claim nor the impact, if any, of the Connecticut AUSA's sentencing arguments on the effectiveness of that portion of the plea agreement.

V.     CONCLUSION

The Court DISMISSES without prejudice Defendant's Motion to Dismiss Double Jeopardy (ECF No. 145).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 21st day of December, 2018