UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:18-cr-00098-JAW |
| | ) | |
| LUIS PADILLA | ) | |

**ORDER ON DEFENDANT'S RENEWED MOTION TO DISMISS**

A defendant renews a double jeopardy motion to dismiss based on the defendant's past conviction in one district for his role in a narrower drug trafficking conspiracy and a pending indictment in this district for a related, but broader drug trafficking conspiracy. The Court dismissed the double jeopardy claim in a prior order, but without prejudice, to allow the defendant to reintroduce his motion with a more complete record and briefing. Upon the additional briefing and evidence of both parties, the Court reiterates its earlier conclusion that the defendant sustained his prima facie burden by presenting a non-frivolous double jeopardy claim and that the burden shifted to the government to prove that the indictments charge separate offenses. The Court now concludes that the government failed to show it is not prosecuting the defendant twice for the same crime. The Court grants the defendant's motion to dismiss the indictment on double jeopardy grounds.

I.    **BACKGROUND**

A.    **Procedural History**

1

On July 18, 2018, a federal grand jury in the United States District Court for the District of Maine indicted Luis Padilla and several other defendants for participating in a drug trafficking conspiracy in violation of federal criminal law. *Indictment* (ECF No. 2) (*Me. Indictment*).  On October 16, 2018, Mr. Padilla moved to dismiss the indictment, claiming a Fifth Amendment violation of double jeopardy. *Def.'s Mot. to Dismiss* (ECF No. 145) (*Def.'s Mot. to Dismiss Double Jeopardy*).  In support of his motion, Mr. Padilla attached the sentencing memorandum and presentence report filed by the Government in the United States District Court for the District of Connecticut, Case 3:16-cr-00205-VLB.  *Id.* Attach. 1, *Ex. 1- Ct. Prosecutor Sentencing Mem.* (ECF No. 145-1) (*Conn. Prosecutor Sentencing Mem.*); *id.* Attach 2., *Ex. 2- Ct. Pre-Sentence Report* (ECF No. 145-2).  The Government opposed the motion on October 31, 2018, including as support a copy of the indictment, the plea agreement, a transcript of the Rule 11 proceeding, and a copy of the judgment in the Connecticut case.  *Gov't's Resp. in Opp'n* (ECF No. 158); *id.* Attach. 2., *Copy of Plea Agreement in Case 3:16-cr-00205-VLB, Doc. # 129 (Plea Agreement)*; *id.* Attach 3., *Tr. of Padilla's Connecticut Plea Hr'g in Case 3:16-cr-00205-VLB (Plea Tr.)*; *id.* Attach. 4, *Tr. of Padilla's Connecticut Sentencing Hr'g in Case 3:16-cr-00205-VLB (Sentencing Tr. I)*; *id.* Attach 5., *Copy of J. in Case 3:16-cr-00205-VLB*, Doc. # 189 (*J.*).  On December 21, 2018, the Court dismissed without prejudice Mr. Padilla's motion.  *Am. Order on Def.'s Mot. to Dismiss* (ECF No. 175) (*Prior Order*).

On February 14, 2019, Mr. Padilla filed a renewed motion to dismiss with additional supporting evidence.  *Def.'s Renewed Mot. to Dismiss* (ECF No. 200) (*Def.'s*

*Renewed Mot.*); *Sealed Add'l Attachs. re Renewed Mot. to Dismiss* (ECF No. 204), *Ex. 1: Plea Agreement 3:16-cr-205 (Plea Agreement)*; *id.* Attach. 1, *Report of Investigation 11/15/2016* (*Report of Investigation*); *id.* Attach 2, *Addendum to Plea Agreement 3:16-cr-205.*  The Government responded in opposition on March 5, 2019; along with its response, the Government filed several exhibits.  *Gov't's Obj. to Def.'s Renewed Mot. to Dismiss* (ECF No. 218) (*Gov't's Opp'n*); *id.* Attach. 1, *Connecticut Sentencing Hr'g, 2/27/18* (*Sentencing Tr. II*); *id.* Attach. 2, *Part 1: Connecticut Evidentiary Hr'g, 1/30/18* (*Evidentiary Hr'g Tr. I*); *id.* Attach 3, *Part 2: Connecticut Evidentiary Hr'g, 1/30/18* (*Evidentiary Hr'g Tr. II*); *id.* Attach. 4, *Connecticut Amended Joint Trial Mem.* (*Joint Trial Mem.*).

B.   **The District of Maine Charge**

The indictment reads:

<u>**COUNT ONE**</u>

(Conspiracy to Distribute and to Possess With Intent to Distribute
Controlled Substances)

From on or about January 1, 2015 through on or about September 1, 2017, the exact dates being unknown to the Grand Jury, in the District of Maine and elsewhere, the defendants

**LUIS PADILLA, a/k/a "Twin,"**

**DAMIAN PERRY, a/k/a "Primo,"**

**LUIS HERNANDEZ, a/k/a "Flacco,"**

**JASON MANNIX, a/k/a "Boston,"**

**SAMMANTHA JOHNSON, a/k/a "Sam,"**

**MALCOLM GREENLAW, a/k/a "Mac,"**

**And**

**ERICA OLIVEIRA**

and others known and unknown, knowingly and intentionally conspired together and with one another, to distribute and possess with the intent to distribute, controlled substances including a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

## QUANTITY OF HEROIN AND COCAINE BASE
## INVOLVED IN THE CONSPIRACY

With respect to the defendants **LUIS PADILLA, a/k/a "Twin,"** **DAMIAN PERRY, a/k/a "Primo,"** their conduct as members of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved one kilogram or more of a mixture or

4

substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21, United States Code, Section 841(b)(I)(A)(i) and 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(A)(iii).

With respect to the defendants, **LUIS HERNANDEZ, a/k/a "Flacco," JASON MANNIX, a/k/a "Boston," SAMMANTHA JOHNSON, a/k/a "Sam," MALCOLM GREENLAW, a/k/a "Mac," and ERICA OLIVEIRA** their conduct as members of the conspiracy charged in Count One, which includes the reasonably foreseeable conduct of other members of the narcotics conspiracy charged in Count One, involved a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance and a quantity of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C), all in violation of Title 21, United States Code, Section 846.

*Id.* at 1-2.[1]

## C.   The Connecticut Charge

---

[1]      The District of Maine indictment contained a count two, but it involved one of the other defendants. *Me. Indictment* at 3.

On December 7, 2016, a federal grand jury in the District of Connecticut issued a three-count indictment against Mr. Padilla, including Count One.  *Gov't's Obj. to Def.'s Mot. to Dismiss* (ECF No. 158) (*Gov't's Opp'n*), Attach. 1, *Indictment* (*Conn. Indictment*).  Count One reads:

<u>COUNT ONE</u>

(Conspiracy to Distribute and to Possess with Intent to
Distribute Controlled Substances)

1.  From approximately October 1, 2016 to on or about October 12, 2016, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY, and others known and unknown to the Grand Jury, knowingly and intentionally conspired together and with one another, to possess with intent to distribute, and to distribute, controlled substances, namely a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, and a mixture and substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 841(a)(1).

<u>QUANTITY OF COCAINE BASE INVOLVED IN THE
CONSPIRACY</u>

2.  Defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knew and reasonably should have

foreseen from their own conduct and that of other members of the narcotics conspiracy charged in Count One that the conspiracy involved 28 grams or more of a mixture and substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

## QUANTITY OF HEROIN INVOLVED IN THE CONSPIRACY

3. Defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knew and reasonably should have foreseen from their own conduct and that of other members of the narcotics conspiracy charged in Count One that the conspiracy involved a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## COUNT TWO

### (Possession with Intent to Distribute 28 Grams or More of Cocaine Base)

4. On or about October 12, 2016, in the District of Connecticut, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knowingly and intentionally possessed with intent to distribute 28 grams of more of a mixture and

substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and Title 18, United States Code, Section 2.

COUNT THREE
(Possession with Intent to Distribute Heroin)

5. On or about October 12, 2016, in the District of Connecticut, the defendants DAMIEN PERRY, a.k.a. "Primo," LUIS PADILLA, a.k.a. "Twin," and CECIL STANLEY knowingly and intentionally possessed with intent to distribute a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.

*Id.* at 1-3.

The PSR in the Connecticut case confirms that Mr. Padilla pleaded guilty on July 25, 2017 to Count One of a three-count federal indictment. *Prior Order* at 6 (citing *Def.'s Mot. to Dismiss Double Jeopardy*, Attach. 2, *Def.'s Presentence Report* at 3 (ECF No. 145)) (*PSR*). The initial sentencing took place on January 3, 2018, but the court adjourned the hearing after Mr. Padilla requested an evidentiary hearing on the issue of obstruction and to address a miscalculation in Mr. Padilla's criminal history score discovered during the hearing. *Sentencing Tr. I.* The second part of the

hearing took place on February 27, 2018. *Sentencing Tr. II*. On March 2, 2018, the district court in the District of Connecticut entered judgment, and sentenced Mr. Padilla for his Count One conviction to seventy-eight months of incarceration, five years of supervised release, no fine, and a $100 special assessment. *Id.*

## II.   POSITIONS OF THE PARTIES

### A.   Defendant's Motion

Mr. Padilla asserts that the current indictment in the District of Maine is barred because he previously pleaded guilty to engaging in a conspiracy to distribute and possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 in the United States District Court for the District of Connecticut. *Def.'s Renewed Mot.* at 2. According to Mr. Padilla, the test used to determine double jeopardy when two conspiracies are alleged is met because both prosecutions, which are brought under the same statutory provisions, took place during the same time period, in the same places, and involved the same people. *Id.* at 3-8 (citing *United States v. Gomez-Pabon*, 911 F.2d 847, 860 (1st Cir. 1990)). Furthermore, Mr. Padilla contends that the Government plans to use the same evidence it used to support Mr. Padilla's prior conviction. *Id.*

In support of the "same persons" factor of the test, Mr. Padilla argues that he was central to each of the conspiracies, citing information regarding his role reported by Cecil Stanley to Maine AUSA Casey and investigators from Maine and Connecticut during a proffer in Maine. *Id.* at 4-5. Mr. Stanley reported that he sold

drugs for Mr. Padilla and "that he transported drugs from Waterbury to Maine for Padilla and Perry on 4-5 occasions." *Id*. at 5.[2]

Mr. Padilla also avers that in entering into the plea agreement in the District of Connecticut, he did not waive "defenses to a new prosecution in a completely different jurisdiction," as "the Connecticut plea did not contain any promises by the government or waivers by the Defendant regarding the Maine charges." *Id*. at 9. He argues that because the Connecticut and Maine prosecutors were aware of the overlap in the activities of the alleged conspiracy in both states, they should have been aware of the potential double jeopardy issue that could arise from breaking up the conspiracy into prosecutions in both jurisdictions. *Id.*

**B.    The Government's Opposition**

---

[2]    Mr. Padilla filed the renewed motion to dismiss on February 14, 2019. *Renewed Mot.* at 1. On February 19, 2019, he filed a motion to seal exhibits he had filed in support of his motion to dismiss. *Def.'s Mot. to Seal* (ECF No. 203). Because Mr. Padilla filed the sealed exhibits after he filed the motion, the memorandum refers to and quotes from the later-filed attachments without any actual citations, much less pincites, to the exhibits themselves. The absence of citation violates the local rules. D. ME. LOC. R. 147(a).

More to the point, the reason for the local rule is to place the burden of supporting references within a motion on the preparer of the motion, not the responding party or the court. The absence of citation required the Court to engage in much more work than should have been necessary to rule on the motion. The Court has had to comb through the record to locate each uncited quotation and reference to assure itself that Mr. Padilla's references were accurate and to weigh the evidence appropriately and fairly consider Mr. Padilla's arguments.

The better practice is for the preparer of a memorandum relying on documents subject to sealing to prepare the memorandum in anticipation of the granting of the motion to seal and not leave the responding party and the reviewing court in the dark.

Despite the extra delay caused by the unorthodox briefing by the Defendant, the Court strived to issue this decision on as timely a basis as possible. Apparently defense counsel contacted the Clerk's Office, wondering when the Court would issue its order as this case is on the May trial list and jury selection is set for May 7, 2019. Before this motion was ready for decision, the Court had to wait until March 19, 2019 to see if Mr. Padilla would file a reply, which he did not. Given its urgency, the Court did its best to address issues that, if there had been more time, would have merited a more thorough discussion. Nevertheless, the Court determined that it was better to issue the current order early than a more considered decision later.

The Government opposes Mr. Padilla's renewed motion. *Gov't's Opp'n* at 1. In response to Mr. Padilla's contention that the two alleged crimes took place during the same period of time, the Government contends that in the joint trial memorandum filed prior to the Rule 11 proceeding in the Connecticut case, "the parties limited the description of the facts to the events of early October 2016 culminating in the seizure of 95.2 grams of cocaine base and 55.1 grams of heroin." *Id.* at 3. According to the Government, "it is apparent that in the Connecticut case the prosecution and the defendant both agreed that the facts of the Connecticut case related to what happened in early October 2016." *Id.*

The Government does not dispute that Mr. Padilla was a central figure in both the Connecticut and the Maine conspiracies. *Id.* at 3. It argues, however, that for the "same persons" factor to go in the Defendant's favor, "the defendants in the Connecticut case [must be] identical to the defendants in the Maine case." *Id.* (citing *United States v. Laguna-Estela*, 394 F.3d 54, 57 (1st Cir. 2005); *United States v. Hart*, 933 F.3d 80, 86 (1st Cir. 1991)). Here, as identical defendants have not been charged in both prosecutions, the Government contends that the factor weighs in its favor. *Id.* at 4.

The Government disputes Mr. Padilla's contention that the alleged conspiracy took place in the same locations, arguing that Mr. Padilla's alleged conduct in Maine referenced in the PSR and the sentencing memorandum in the Connecticut case, as well as Mr. Stanley's proffer, is irrelevant because none of which "resulted in an increase in his Connecticut sentence based on distribution events in Maine, and as

11

such, it cannot be said that the pending prosecution will result in a *second* punishment based on those matters." *Id.* at 4 (citing *Albernaz v. United States,* 450 U.S. 333, 343 (1981) (emphasis in original)).

With regard to the "same evidence" factor, the Government concedes that it plans to use some of the same evidence used in the Connecticut case. However, it contends that the evidence is sufficiently different to avoid a double jeopardy issue. Specifically, the Government states that it plans to use evidence from "12-15 cooperating defendants and cooperating witnesses, law enforcement officers from Maine, New Hampshire and Connecticut, audio recordings, telephone records, text messages, evidence of drug seizures, as well as evidence of undercover buys, including a buy from Padilla himself . . .." *Id.* at 5-6. The Government maintains that "none of the Maine cooperating witnesses and cooperating defendants testified in connection with the bringing of the charges in Connecticut." *Id.* (emphasis in original). It contends that "[t]he fact that Mr. Stanley proffered after he was arrested in Connecticut does not render him a witness for the U.S. Attorney's Office in Maine . . .." *Id.*

The Government maintains its original position that the crimes were charged under two different statutory provisions, because they require proof of different drug quantities. *Id.* at 8. According to the Government, the Court's concern that a prosecutor could carve up a single conspiracy into multiple prosecutions, charging lower drug quantities, would reveal a stronger case for the other four factors of the test. *Id.*

Finally, the Government places great weight on its contention that Mr. Padilla "received the punishment he bargained for" in the Connecticut prosecution, and that the parties agreed that "his Connecticut sentence would be based solely on the drugs he was caught with in Connecticut in early October 2016 . . .," which it argues should preclude the viability of Mr. Padilla's double jeopardy argument in the current prosecution. *Id*.

## III.  DISCUSSION

### A.    The Law of Double Jeopardy

Under the Fifth Amendment, no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST., AM. V.  The double jeopardy clause "protects against multiple punishments for the same offense." *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012) (quoting *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011)).  The seminal double jeopardy case from the United States Supreme Court is *Blockburger v. United States*, 284 U.S. 299 (1932).  In *Blockburger*, the Supreme Court described the proper analysis: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*. at 304; *United States v. Stefanidakis*, 678 F.3d 96, 100 (1st Cir. 2012) ("*Blockburger*. . . prohibits charging the same conduct under two separate statutes unless each statute requires proof of a fact that that other does not").  In general, "[t]he *Blockburger* test focuses on the proof needed to establish the statutory elements of each offense, rather than the actual evidence presented at

trial." *United States v. Morris*, 914 F. Supp. 637, 640 (D. Me. 1996) (quoting *Illinois v. Vitale*, 447 U.S. 410, 416 (1980)).

"In conspiracy cases, a more nuanced form of the same evidence test is applied because of the possibility that the government literally could comply with it while actually carving up a single conspiracy to commit several crimes into separate prosecutions." *Laguna-Estela*, 394 F.3d at 57; *see United States v. Booth*, 673 F.2d 27, 29 (1st Cir. 1982). Accordingly, the Court of Appeals for the First Circuit set forth a five-factor test for courts to use in determining whether two charged conspiracies are the same for double jeopardy purposes. "These factors are: (1) the time during which the activities occurred; (2) the persons involved in the conspiracies; (3) the places involved; (4) whether the same evidence was used to prove the two conspiracies; and (5) whether the same statutory provision was involved in both conspiracies." *Laguna-Estela*, 394 F.3d at 57 (citing *Gomez-Pabon*, 911 F.2d at 860); *United States v. Garcia-Rosa*, 876 F.2d 209, 228 (1st Cir. 1989); *United States v. Fisher*, 3 F.3d 456, 461 (1st Cir. 1993); *United States v. Collazo-Aponte*, 216 F.2d 163, 198 (1st Cir. 2000); *United States v. Booth*, 673 F.2d at 29)). "A defendant claiming double jeopardy has the burden of presenting evidence to establish a prima facie nonfrivolous double jeopardy claim. Once such a claim is established, the burden shifts to the government to prove by a preponderance of the evidence that the indictments charge separate offenses." *Laguna-Estela*, 394 F.3d at 56 (quoting *Booth*, 673 F.2d at 30).

## B.    Analysis

### 1.   The Double Jeopardy Claim

In its order on Mr. Padilla's original motion to dismiss, the Court considered the First Circuit's five-factor test and determined that "Mr. Padilla sustained his prima facie burden to establish a non-frivolous claim of double jeopardy." *Prior Order* at 13.   The Government did not address this part of the Court's earlier order and the Court will not revisit this determination here.   Instead, the Court examines whether, in light of additional argument and evidence presented by both parties in Mr. Padilla's renewed motion and the Government's response, the Government satisfied its burden, by a preponderance of the evidence, that the indictments charge separate offenses. *Laguna-Estela*, 394 F.3d at 56.

#### a.   Timing

In its order on the original motion to dismiss, the Court observed that although "the Maine indictment charged a conspiracy that lasted from about January 1, 2015 through about September 1, 2017, a period of two years and eight months," while "the Connecticut indictment alleged a conspiracy lasted from about October 1 to about October 11, 2016, a period of only eleven days," the narrower conspiracy having taken place entirely within the time period of the broader conspiracy. *Prior Order* at 13-14. The Court cited *Laguna-Estela*, in which the First Circuit determined that the timing factor weighed in the favor of the defendant when the narrower and broader conspiracies overlapped by only two months.   *Id.* at 14 (citing *Laguna-Estela*, 394 F.3d at 57).

Neither party brings new evidence or advances a new argument regarding the timing of the two conspiracies that changes the Court's original conclusion.  Citing the Connecticut parties' Amended Joint Trial Memorandum, the Government maintains that the period of the two conspiracies was not the same because the Connecticut indictment limited the charged conduct to a narrow period in October 2016.  *Gov't's Opp'n* at 3 (citing *United States v. Luis Padilla, Am. Jt. Trial Mem.* Attach. 4).  The Government concludes without citing authority that "[i]t is apparent that in the Connecticut case the prosecution and the defendant both agreed that the facts of the Connecticut case related to what happened in early October 2016.  The Connecticut case does not involve the same time period, or charge the same crime, as the Maine case."  *Id.*

Mr. Padilla refutes this claim, again noting that the period of the Connecticut conspiracy fell wholly within the period of the Maine conspiracy.  *Def.'s Mot.* at 3.  Furthermore, Mr. Padilla quotes the Connecticut prosecutor's sentencing memorandum, which states that "Padilla practically doubled his investment in narcotics when he sold the narcotics in Maine.  Thus each trip, such as the one he began on October 12, 2016, yielded thousands of dollars, and occasionally firearms, as profit."  *Id.*[3]  In Mr. Padilla's view, the Connecticut prosecutor "clearly intimated that Padilla's Maine activities occurred much more than just between the dates alleged in the indictment."  *Id.* at 4.

---

[3]     As noted above, other than saying in his sentence that he was quoting from the government's sentencing memorandum, Mr. Padilla failed to provide a citation.  The Court located the quoted phrase.  *Conn. Prosecutor's Sentencing Mem.* at 8.

Even setting aside the additional materials and evidence from the Connecticut sentencing, the conspiracy dates in the two indictments are enough to support the existence of one conspiracy, as the two conspiracies overlapped completely in their timing.  In *Garcia-Rosa*, the First Circuit stated, "[a]s regards the first factor, there is complete overlap between the two conspiracies. The conspiracy to which Soto pled guilty (the "narrow" conspiracy) occurred during the twenty-three month period during which the conspiracy charged in count 1 (the "broad" conspiracy) existed. This factor favors the defendant's claim." 876 F.2d at 228; *see also Fisher*, 3 F.3d at 461 (concluding that two charged conspiracies with "no discernible temporal gap . . . tend to indicate that there was a single conspiracy"); *Gomez-Pabon*, 911 F.2d at 860 (concluding that, when the two charged conspiracies overlapped by eleven days, the timing supported the existence of a single conspiracy).

The Court concludes that the timing of the two charged conspiracies supports Mr. Padilla's claim of double jeopardy.

**b.    Persons Involved**

"The Connecticut indictment charged three people: Mr. Padilla, Mr. Perry, and Mr. Stanley; the Maine indictment charges seven people: Mr. Padilla, Mr. Perry, Luis Hernandez, Jason Mannix, Sammantha Johnson, Malcolm Greenlaw and Erica Oliveira." *Prior Order* at 14.  In its previous order, the Court viewed the "same persons" factor as mixed.  *Id*. at 15.  Despite the Court's earlier analysis of relevant caselaw and the complexity of determining whether the same individuals were charged in two prosecutions when other individuals were also charged in one or both

prosecutions, the Government maintains the issue is black and white. According to the Government, the question is whether the defendants in the Connecticut case are identical to the defendants in the Maine case." *Gov't's Opp'n* at 3 (citing *Laguna-Estela*, 394 F.3d at 57; *Hart*, 933 F.3d at 86). The First Circuit's guidance on this factor, however, refutes the Government's position.

As the Court described in detail in its prior order, there were three defendants charged in the Connecticut indictment. Two of those three have been charged in Maine, along with five other individuals. *Prior Order* at 14-15. The Court considered the First Circuit's conclusion in *Garcia-Rosa*, in which two individuals were charged in the narrow conspiracy, and the same two individuals were charged, along with twenty-nine other persons, in the broad conspiracy, weighing in favor of the existence of one conspiracy. *Id.* at 14 (citing *Garcia-Rosa,* 876 F.2d at 228). It also considered the court's conclusion to the contrary in *Laguna-Estela*, in which only the defendant was common to both conspiracies. 394 F.3d 54. Given that the circumstances in this case fall between those in *Laguna-Estela* and *Garcia-Rosa*, the Court concluded that this factor is mixed.

The Court noted that the *Garcia-Rosa* Court also weighed the fact that the defendant "was a central character in both conspiracies" in concluding that the presence of additional individuals who were charged in the broader conspiracy "does not undercut the strong suggestion that the narrow conspiracy was merely a 'portion' of the broad conspiracy." 876 F.2d 209, 228 (1st Cir. 1989) (citing *United States v. Levy*, 803 F.2d 1390, 1395 (5th Cir. 1986) ("When the central characters in both

indictments are the same, that the activities in the 'K' indictment involve more people than the 'A' indictment proves little")).  Although the parties did not address whether Mr. Padilla was a central character in both conspiracies in the original motion and response, the parties now agree that Mr. Padilla was central to both the Maine and the Connecticut conspiracies.  *Gov't's Opp'n* at 3 ("There is no dispute that Padilla was central to the Connecticut Conspiracy and the Maine Conspiracy"); *Def.'s Mot.* at 4-5 ("There is little doubt that Padilla and Perry were central figures in each of the alleged conspiracies").   In support of this contention, Mr. Padilla states that "Cecil Stanley himself reported to authorities during a proffer with Maine AUSA Casey and investigators from Maine and Connecticut that he was selling drugs for Padilla that he obtained from Padilla multiple times both in Connecticut and in Maine, as well." *Def.'s Mot.* at 4-5.  Mr. Padilla's central role in both the Maine and Connecticut charged conspiracies supports his position that only one conspiracy existed.

Although Mr. Padilla's role in the two conspiracies is not dispositive on the issue, it tips the Court's analysis in favor of the defendant, where it previously viewed the factor as mixed.  The fact remains that a third individual was charged in the Connecticut conspiracy who was not charged in the Maine conspiracy, Cecil  Stanley, whose proffer indicates he not only had knowledge of the Maine end of the conspiracy, he participated in transporting and selling drugs in Maine on multiple occasions. *Report of Investigation* at 2-4.  In *Laguna-Estela*, the First Circuit quoted with approval the Third Circuit case of *United States v. Smith* and the *Smith* Court's

analysis of the "persons involved" factor.  394 F.3d at 57-58 (quoting *Smith*, 82 F.3d

1261, 1269 (3d Cir. 1996)).  In *Smith*, the Third Circuit wrote:

> [I]n evaluating the degree of overlap-in-participants factor in a
> particular case, one must look to the circumstances of both the common
> participants and the participants apparently connected with only one of
> the alleged conspiracies.  When the evidence indicates that the activities
> of the alleged conspiracies are not interdependent or mutually
> supportive and that there are major participants in each conspiracy who
> lack knowledge of, or any interest in, the activities of the other, this
> factor weighs heavily in favor of a conclusion that two conspiracies exist.

82 F.3d at 1269.  The fact that the Court has been provided with no evidence to

suggest that the major participants in either conspiracy did not have knowledge of or

participate in both the Connecticut and Maine conspiracies also favors a conclusion

that one conspiracy existed.  The Court finds this factor favors Mr. Padilla's double

jeopardy claim.

### c.    Places Involved

In its prior order, the Court concluded the evidence, including the sentencing

memorandum submitted by the Connecticut prosecutor and the indictments,

establishes that "both conspiracies took place in Waterbury, Connecticut as a home

base and in eastern Maine as a distribution point.  This factor favors Mr. Padilla."

*Prior Order* at 15.  In its response to Mr. Padilla's renewed motion, the Government

contends that Mr. Padilla "can point to no single fact in any of those materials that

resulted in an increase in his Connecticut sentenced based on distribution events in

Maine, and, as such, it cannot be said that the pending prosecution will result in a

second punishment based on those matters."  *Gov't's Opp'n* at 4 (citing *Albernaz*, 450

U.S. at 343).

20

The Government views this factor too narrowly.  Caselaw establishes it is not whether Mr. Padilla was punished in the Connecticut proceeding for conduct that took place in Maine, but whether the places involved in the two conspiracies are the same.  In *Laguna-Estela*, the First Circuit rejected the Government's argument:

> The government relies on the fact that Mr. Laguna's plea agreement in the Florida case refers only to his involvement in the scheme to possess and distribute heroin in the vicinity of Orange and Osceola Counties, Florida. However, Mr. Laguna's presentence report, written over a year before Mr. Laguna was indicted in the Puerto Rico case, contains a copy of Mr. Laguna's written statement in which he writes that he agreed to make deliveries of drugs in Puerto Rico. Further, Mr. Laguna testified that his involvement with Mr. Ramírez, both before and after Mr. Ramírez was arrested, involved drug transactions between Florida and Puerto Rico. Thus, location is common to both conspiracies.

394 F.3d at 58.  Thus, the Court maintains its prior determination that this factor favors Mr. Padilla.

### d.   Evidence

### i.   The Connecticut Charge

The Court summarized the record evidence in the Connecticut proceeding in its order on Mr. Padilla's original motion to dismiss.  *See Prior Order* at 16-20.  Of note, for the purposes of this analysis, is that "[w]hen describing the offense conduct, the PSR extensively discusses a conspiracy based in Waterbury, Connecticut to distribute heroin in Maine . . . . However, except for Mr. Perry, none of the individuals mentioned in the PSR was indicted in Maine." *Id.* at 17 (citing *PSR* at ¶ 7).  The Government's sentencing memorandum also extensively discusses Mr. Padilla's conduct in Maine, namely that he participated "in the broader conspiracy in which

drugs were obtained and packaged in Connecticut and transported and distributed in eastern Maine . . ..” *Id.* at 18.

### ii.     The Maine Indictment

In its response to the Defendant's renewed motion to dismiss, the Government maintains "none of the Maine cooperating witnesses and cooperating defendants testified in connection with the bringing of the charges in Connecticut." *Gov't's Opp'n* at 6.  According to the joint trial memorandum in the Connecticut case, the parties agreed which witnesses would be called at trial regarding "the events surrounding the seizure of the drugs in Connecticut in early October 2016:"

> (1) DEA Special Agent Rodney George
> (2) DEA Special Agent Ray Walzyk
> (3) DEA Task Force Officer Jonathan Trosser
> (4) Connecticut State Trooper Robert Garlbalosa
> (5) Connecticut State Police Sergeant Thomas Kiely
> (6) DEA Analyst Jason Houle
> (7) Cecil Stanley
> (8) Cumberland Farms Custodian of Records, and
> (9) DEA Senior Forensic Chemist Jennifer Skuches

*Id.* at 5 (citing *Joint Trial Mem.* at 3-5).

By contrast, the Government says, this case will involve the testimony of "12-15 cooperating defendants and cooperating witnesses, law enforcement officers from Maine, New Hampshire, and Connecticut, audio recordings, telephone records, text messages, evidence of drug seizures, as well as evidence of undercover buys, including a buy from Padilla himself." *Id.* at 6.  The Government contends that this evidence "will demonstrate the existence of a conspiracy that lasted over two years." *Id.*

On April 12, 2019, the Government filed a witness list setting forth the individuals it may call as witnesses in the trial of the Maine case in May 2019. *Gov't's Witness List* at 1-5 (ECF No. 234) (*Gov't's Witness List*). The Government noted that out of an abundance of caution, it included the names of witnesses it might not call. *Id.* at 1, n.1. Not including records custodians, the Government's recently-filed list contains seventy-one names of whom fifteen are law enforcement witnesses. *Id.* at 1-5. The Government's trial witness list includes one law enforcement witness, Rodney George, a Special Agent with the United States Drug Enforcement Administration in its New Haven, Connecticut office, common to both the Connecticut and Maine witness lists. *Compare Jt. Trial List* at 3-4, *with Gov't's Witness List* at 2. Otherwise, there is no commonality between the Connecticut and Maine witness lists.

### iii.   Cecil Stanley's Proffer

To show the same evidence has been used in support of both prosecutions, Mr. Padilla includes a report of investigation summarizing a proffer made by Cecil Stanley at the United States Attorney's office in Bangor, Maine on November 7, 2016, after Mr. Stanley was arrested and charged in Connecticut. *See Report of Investigation* at 1-6. Maine AUSA Joel Casey was present, as was Special Agent Rodney George, who prepared the report, was also referenced in the joint trial memorandum filed in the Connecticut case as a witness who would be called to testify at trial, and as just noted is listed as a potential witness in the Maine trial. *Id.* at 1. According to Mr. Padilla, the report of investigation shows that Mr. Padilla has already been punished for his drug activity in Maine, because Mr. Stanley described

Mr. Padilla and Mr. Perry transporting drugs from Connecticut to Maine on multiple occasions, as well as their distribution activities in Maine, and the proffer was provided in Connecticut discovery. *Def.'s Mot.* at 6-7.

The Government, in response, states:

> The fact that Cecil Stanley proffered after he was arrested in Connecticut does not render him a witness for the U.S. Attorney's Office in Maine who testified in connection with the bringing of charged against Padilla in Connecticut. The defendant can point to no piece of Connecticut discovery confirming that any Maine cooperating witness or cooperating defendant testified in connection with the bringing of charges against him in Connecticut.

*Gov't's Opp'n* at 7.

Mr. Stanley's proffer provides significant detail regarding Mr. Padilla's drug activity in Maine, including the following statements:

> At the direction of Luis PADILLA AKA TWIN and Damian PERRY AKA PRIMO, STANLEY and Richard STEVENS drove from Maine to PERRY's residence in Waterbury for the purpose of transporting cocaine from Waterbury CT to Maine.
>
> Stanley stated that after he was released from custody and was back in Princeton, Maine, PERRY called him from a restricted number while STANLEY was working at the wreath factory and questioned him about getting released and thinks that STANLEY ratted them out.
>
> STANLEY stated that he first met PADILLA in 2013 or 2014 when PADILLA and Lonny JOYNER AKA FLO were selling heroin and pills on the Indian reservation in Princeton, Maine. STANLEY stated driving JOYNER to Lee Maine to pick up drug and eventually give JOYNER multiple rides to Waterbury and back up to Maine carrying drugs and money.
>
> STANLEY stated that he transported drugs from Waterbury to Maine for PADILLA and PERRY on five or six occasions. STANLEY would drop [] drugs off to a house in Hamden, Maine. The house was by a school toward Winaport, and a woman named Shelly LNU lived there. STANLEY also recalled dropping PADILLA and PERRY off at that

24

house also.  STANLEY stated that PADILLA and PERRY would often hide the drugs in the ceiling there.

STANLEY stated that he would go down to the Hamden house pick up pills, crack cocaine and heroin from PADILLA and PERRY and transport it back to Princeton Maine where he was sell[ing] the drugs. He would then drive back down and give PADILLA and PERRY the money from the sales and pick up more.

STANLEY stated that Clay HOWARD and a young kid they called "J" were selling drug for PADILLA and PERRY.  HOWARD was selling out of the Fairfield Inn and "J" was dealing drugs out of Archie LACOTTA's house on the reservation.

*Report of Investigation* at 1-4.

The Court shares Mr. Padilla's concerns regarding Mr. Stanley's proffer, which appears to allege one conspiracy, in which Mr. Stanley, Mr. Padilla, and Mr. Perry obtained drugs in Waterbury, Connecticut and sold them in Eastern Maine.  In fact, the majority of Mr. Stanley's proffer relates to drug activity in Maine.  This, along with the numerous references to Mr. Padilla's drug trafficking activity in Maine in the Connecticut PSR, the sentencing memorandum, and the Rule 11 proceeding, heightens the concern the Court expressed in its prior order that Mr. Padilla is being charged in Maine for the same criminal conduct to which he already has pleaded guilty to and been sentenced in Connecticut.

The Government contends that Mr. Padilla "conflates Stanley providing cooperation useful to the Maine authorities following his Connecticut arrest with the concept of whether the Connecticut case and the Maine case were brought based on the same evidence." *Gov't's Opp'n* at 6.  According to the Government, "the defendant can point to no single piece of information provided by Stanley that resulted in

charges being brought against the defendant in Connecticut or resulted in the defendant's Connecticut sentence being increased." *Id*. However, the Government otherwise admits that "this prosecution would include evidence from the Connecticut case." *Id*.

The Court is not reassured. Although the Court accepts that Mr. Stanley's proffer may not have influenced the charges brought against Mr. Padilla in Connecticut, Mr. Stanley's name was on the list of witnesses who would testify on behalf of the government if the Connecticut case had gone to trial. While the joint trial memorandum stated that the witnesses would discuss only the events that took place in early October in Connecticut, it is difficult to determine whether Mr. Stanley would have been able to isolate the events of an eleven-day period given how inextricably linked Mr. Padilla's drug trafficking in Connecticut and Maine appear based on Mr. Stanley's account.

The Government's recently-filed witness list for the Maine trial confirms that there will be very little, if any, overlap between the listed trial witnesses in Connecticut and the listed trial witnesses in Maine. Nevertheless, as the Court understands the Padilla conspiracy, its modus operandi was to obtain drugs in Connecticut and, after transporting them to Maine, distribute them there. It seems unremarkable that the number of witnesses in the distribution district substantially eclipses the number of witnesses in the source district or that the people in Connecticut who were the wholesale suppliers would not know the addicts in Maine who were the consumers.

26

In the Court's view, this situation is much like *Garcia-Rosa*, where the First Circuit reversed a defendant's conviction on double jeopardy grounds because he had previously been charged, convicted and sentenced on a narrow drug trafficking conspiracy which was "a phase of the broad conspiracy."  876 F.2d at 228.  Here, as in *Garcia-Rosa*, the Defendant "demonstrated beyond mere speculation that the broad conspiracy subsumed the narrow conspiracy in terms of objective, location, timing and parties involved."  *Id.* at 229.  Once the defendant in *Garcia-Rosa* established a non-frivolous double jeopardy claim, the burden shifted to the government and the First Circuit wrote:

> [The government] has adduced no evidence to prove that the narrow conspiracy was more than just one distribution phase of the broad conspiracy.  There is no basis in the record to believe that Soto and Nevarez had an independent organization, separate financing, or a different source of drugs.  Consequently, we hold that the two conspiracies are the "same" offense for double jeopardy purposes, and therefore that Soto Alverez' conviction on count 1 must be reversed.

*Id.*

The Court concludes that the Government has not met its burden to establish that the Connecticut case was "more than just one distribution phase of the broad conspiracy."  *Id.*  Indeed, the evidence confirms that Mr. Padilla was charged, convicted and sentenced for actions that formed the Connecticut end of the Padilla conspiracy, a drug trafficking organization that obtained narcotics in Waterbury, Connecticut, transported them to Eastern Maine, sold them in eastern Maine, and returned the cash to Waterbury, Connecticut, to repeat the cycle.  Just as in *Garcia-Rosa*, the Government has produced no evidence that the conspiracy indicted in

Maine had "an independent organization, separate financing, or a different source of drugs." *Id.*

Although the Government has a point in the differences between the witnesses it intends to call in Maine and the witnesses the parties intended to present in Connecticut, still the Court finds that the evidence is that Mr. Padilla was indicted in both Connecticut and Maine for his role in the Padilla conspiracy and this factor, though not unalloyed, favors him.

### e.   Statutory Provisions

The Government maintains its position that Mr. Padilla has been charged with different crimes, because the drug quantities alleged in each crime result in charges under different subsections of 21 U.S.C. § 841. As the Court detailed in its prior order on Mr. Padilla's motion to dismiss:

> In Count One, the Connecticut indictment charged a conspiracy to distribute and to possess with the intent to distribute controlled substances, a violation of 21 U.S.C. § 841(a), but that the Connecticut indictment specifically charged that the narcotics conspiracy involved 28 grams or more of crack cocaine, a violation of 21 U.S.C. § 841(b)(1)(B), and an unspecified amount of heroin, a violation of 21 U.S.C. § 841(b)(1)(C). *Id.* For the crack cocaine charge, the penalties include a minimum of five years of incarceration and a maximum of forty years of incarceration. 21 U.S.C. § 841(b)(1)(B). For the heroin charge, the penalties include a maximum of twenty years of incarceration. 21 U.S.C. § 841(b)(1)(C).
>
> Like the Connecticut indictment, the Maine indictment charged Mr. Padilla with engaging in a conspiracy to distribute and to possess with the intent to distribute controlled substances, a general violation of 21 U.S.C. § 841(a)(1). The Maine indictment also charged that the narcotics conspiracy involved at least one kilogram of heroin, a violation of 21 U.S.C. § 841(b)(I)(A)(i) and at least 280 grams of cocaine base, a violation of 21 U.S.C. § 841(b)(1)(A)(iii). Both the heroin and crack cocaine

> allegations subject Mr. Padilla to at least ten years of incarceration and a potential maximum term of life. 21 U.S.C. § 841(b)(1)(A).

*Prior Order* at 21. Although both indictments charged Mr. Padilla with engaging in a conspiracy to distribute and to possess with the intent to distribute controlled substances, a general violation of 21 U.S.C. § 841(a)(1), each alleges different drug quantities, and therefore charges him under different penalty provisions of § 841(b)(1). *Id.*

The Court acknowledged in its prior order that under United States Supreme Court and First Circuit precedent, when a drug quantity triggers a mandatory minimum and a statutory maximum sentence under 21 U.S.C. § 841, "each of the subsections of 21 U.S.C. § 841(b)(1), with its associated drug quantities and sentencing ranges, is a separate crime." *Id.* at 22 (citing *Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *see also United States v. Ramos-Gonzalez*, 775 F.3d 483, 508 (1st Cir. 2015); *United States v. Pizarro*, 772 F.3d 284, 292 (1st Cir. 2014)). Although this is established precedent regarding what evidence must be presented to the jury, whether this rule applies to constitutional analysis, such as double jeopardy claims, is less clear.[4]

---

[4]     There is some First Circuit authority that suggests a different analysis applies to double jeopardy claims. *See Garcia-Rosa* 876 F.2d at 228 ("both conspiracies alleged violations of 21 U.S.C. § 841(a)(1). The narrow conspiracy charged possession of cocaine with intent to distribute, whereas the broad conspiracy charged possession of both cocaine and heroin with intent to distribute. This factor also suggests that the narrow conspiracy was merely a phase of the broad conspiracy, and therefore favors the defendant's claim"); *see also Laguna-Estela*, 394 F.3d at 58 (concluding that the same statutory provision was charged when both conspiracy indictments arose under 21 U.S.C. § 841(a)(1) and § 846). But the First Circuit decided *Garcia-Rosa* and *Laguna-Estela* before *Ramos-Gonzalez* and *Pizarro* where it held, consistent with intervening Supreme Court authority, that the "multiple subsections set out different crimes." *Garcia-Rosa*, 775 F.3d at 508, *Pizarro*, 772 F.3d at 292.

The Court previously expressed hesitation with the application of such a rule to double jeopardy claims. *Prior Order* at 22.   The Court noted:

> Even so, the Court is not entirely convinced that this factor weighs as heavily in favor of the Government as the Government professes. This is because of the unique nature of multiple conspiracy allegations. Assuming that a defendant was involved in a grand drug trafficking conspiracy, if the government sliced off a small part of that conspiracy and indicted a defendant, the drug quantities would invariably be lower than the drug quantities in the broader conspiracy; the government could charge the narrow conspiracy under one subsection of § 841, one that provided less draconian penalties, and charge the broader conspiracy under another subsection of § 841, one that provided more severe penalties. The government could claim that because the crimes were different, double jeopardy concerns did not apply. Yet, what the government would have done is sliced up different aspects of one crime, the grand conspiracy, and charged multiple smaller crimes. If so, the double jeopardy clause's protection "against multiple punishments for the same offense" is eviscerated. [*United States v.*] *Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012).

*Id.* at 22-23.

In response to the Court's concern that this approach could allow a prosecutor to carve up a single conspiracy into several smaller conspiracies alleging smaller drug quantities,[5] while technically complying with the double jeopardy test, the Government contends:

> If a prosecutor attempted such a move, however, analysis of the other factors would undoubtedly reveal the same time frame, the same places, the same defendants, and the same evidence, and lead to the conclusion that the two indictments charged the same offense, despite reliance on differing statutory subsections.

---

[5]      As the First Circuit stated, the law has long prohibited a prosecutor from dividing up a continuing crime and prosecuting each separately. "In 1777, for example, Lord Mansfield held that a statute prohibiting working on Sunday allowed the Crown to convict a baker only once for baking four loaves of bread on one Sunday; it could seek only one penalty of five shillings; it could not convict him four times, once for each loaf, and fine him one pound." *Chagra*, 653 F.2d at 29 (citing *Crepps v. Durden*, 2 Cowper's Reports 640, 98 Eng. Rep. 1283 (K. B. 1777)).

*Gov't's Opp'n* at 8.  In light of the above analysis on Mr. Padilla's renewed motion, the Court faces here the scenario the Government describes.

Given the Court's determination of the other four factors in favor of Mr. Padilla, whether the conspiracies are brought under the same statutory provisions does not carry the day.  If it did, the First Circuit would have simply used the *Blockburger* test to assess a double jeopardy claim as to multiple conspiracies. Instead, the First Circuit stated in *Hart*, "the overlap of statutory provision for each [indictment] does not belie the separateness of the conspiracies established by the other four factors." 933 F.2d at 86.  Here, the Court finds the reverse to be true: the contention that two different crimes were charged does not belie the fact that Mr. Padilla is being prosecuted for conspiracies that took place at the same time, in the same places, by the same persons, based on the same evidence, in effect for different activities within the same conspiracy.

In conclusion, the Court finds that the Government failed to show by a preponderance of the evidence that the two conspiracies in this case are sufficiently distinct for double jeopardy purposes.

## C.   The Impact of the Plea Agreement and the Connecticut Sentencing

In its prior order, the Court considered the impact of Mr. Padilla's plea agreement in Connecticut, which stated that he "may face federal charges in the District of Maine for conduct that goes beyond the time period charged in this Indictment." *Prior Order* at 25 (citing *Plea Agreement* at 7).  The Court further noted that Mr. Padilla acknowledged in his plea agreement that his guilty plea will satisfy

his criminal liability in the District of Connecticut as a result of his participation in the conspiracy. *Id.*

The Government offers no caselaw supporting the proposition that Mr. Padilla formally waived his right to challenge the current indictment on double jeopardy grounds. It contends, however, that the fact that Mr. Padilla formally agreed that the conduct took place within a specified time period in Connecticut, and that he may face criminal charges in the District of Maine for related conduct, should be considered when evaluating the other double jeopardy factors. The Court is not aware of a case, however, in which a court has considered the language of a defendant's plea agreement when applying the First Circuit's five-factor double jeopardy test.

While there is a well-established "rule barring collateral attack on a guilty plea," there is also an exception in "cases where a conviction under a second indictment must be set aside because the defendant's right not to be haled into court was violated." *United States v. Broce*, 488 U.S. 563, 564 (1989) (citing *Blackledge v. Perry*, 417 U.S. 21 (1974); *Menna v. New York*, 423 U.S. 61, 62 (1975)). Here, in light of *Menna*, the defendant has not waived his constitutional right against being prosecuted twice for the same offense simply by pleading guilty in the initial prosecution.

This issue is made more complex by the fact that Mr. Padilla expressly acknowledged that he may face related charges in the District of Maine in his Connecticut plea agreement. As the Court noted in its prior order, Mr. Padilla is

"skirting close to reneging on the terms of his plea agreement in Connecticut." *Prior Order* at 25. However, the Government has not asserted Mr. Padilla's motion to dismiss violates the terms of the existing agreement. Furthermore, while the terms of the plea agreement acknowledge the possibility of future charges, there is no language in the agreement regarding waiver of Mr. Padilla's defenses in a subsequent prosecution and in particular any language in which Mr. Padilla waives his constitutional rights against double jeopardy in a subsequent prosecution in the District of Maine. *See Plea Agreement* at 7. The Court concludes that Mr. Padilla has not waived his double jeopardy claim.

### D.   Timing

Although not directly addressed by the parties, the Court has considered the proper timing of this ruling. On December 27, 2018, the Court dismissed Mr. Padilla's motion to dismiss the Maine indictment on double jeopardy grounds, because the record was unsatisfactory. *Prior Order* at 23-24. Mr. Padilla filed again, supplying some additional information and the Government filed additional documentation as well. The Court acknowledges that double jeopardy claims arrive in the First Circuit having undergone a variety of processes in which the issue was resolved. Occasionally, a defendant will raise the issue on appeal having been tried and convicted, *United States v. Gerhard*, 615 F.3d 7 (1st Cir. 2010), sometimes after having pleaded guilty, *Stefanidakis*, 678 F.3d at 98, and sometimes, as here, in a pretrial motion to dismiss. *United States v. Neto*, 659 F.3d 194 (1st Cir. 2011). Here, Mr. Padilla properly preserved his double jeopardy claim, not once but twice. *See*

*United States v. Neto*, 659 F.3d 194 (1st Cir. 2011) ("The parties do not dispute that Neto properly preserved his claim that the <u>Neto II</u> indictment should have been dismissed").

Once a motion to dismiss is filed, a court may hold an evidentiary hearing on the double jeopardy claim. *Laguna-Estela*, 394 F.3d at 56 (noting that the district judge held an evidentiary hearing on a motion to dismiss the indictment on double jeopardy grounds). In this case, neither the Government nor Mr. Padilla has requested an evidentiary hearing and the Court assumes the parties are satisfied with the record before the Court that they have developed.

To be practical, a court might hold in abeyance a final ruling on the double jeopardy issue, allow the case to go forward, hear the evidence at trial, and decide the double jeopardy question only if the defendant is convicted, based on a fuller understanding of the evidence underlying the new charge. Then if the defendant is not convicted, the court will not have issued an advisory ruling, and, if convicted, the court will have heard the full range of evidence, at least the evidence underlying the new charge.

This cautious approach, however, is countermanded by another principle: the right not to be tried twice for the same crime. *See* 15B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §  3918.5 (2d ed. 1992). In 1997, the United States Supreme Court decided *Abney v. United States*, 431 U.S. 651 (1977), which concluded that a pretrial order rejecting a double jeopardy claim is immediately reviewable because it is a final decision within

34

the collateral order exception to the final judgment rule and therefore satisfies the jurisdictional prerequisites of 28 U.S.C. § 1291. *Id.* at 662. The *Abney* Court quoted Justice Black:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Id.* at 661-62 (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)). Thus, if the Court denied Mr. Padilla's motion, he would have the right to an interlocutory appeal. *Class v. United States*, 138 S. Ct. 798, 811-12 (2018) ("Allowing an interlocutory appeal in that situation [a double jeopardy claim] protects against all harms that flow from the prolongation of a case that should never have been brought"); *United States v. Bravo-Fernandez*, 790 F.3d 41, 45 (1st Cir. 2015); *United States v. Aviles-Sierra*, 531 F.3d 123, 126 (1st Cir. 2008) ("Although a defendant cannot ordinarily pursue an immediate appeal from an interlocutory order in a criminal case, we permit interlocutory appeals from denials of motions to dismiss on double jeopardy grounds"). To dismiss Mr. Padilla's motion and require him to proceed to trial would run against the grain of *Abney* and its progeny and therefore the Court has ruled on the merits of the motion.[6]

### E. Conclusion

---

[6]    The Court also observes that if it had denied Mr. Padilla's motion, under *Abney*, he would have had the right to an immediate appeal.

Case 1:18-cr-00098-JAW   Document 235   Filed 04/16/19   Page 36 of 38   PageID #: 927


In conclusion, the Court is aware of the First Circuit's caution in *Garcia-Rosa* that "one conspiracy conviction [does not give] an individual automatic immunity from subsequent prosecution for a second conspiracy that overlaps the first in terms of duration, personnel, purpose, and location." 876 F.2d at 229. However, the *Garcia-Rosa* Court stressed that the Government must still demonstrate "that the two conspiracies in this case were sufficiently distinct for double jeopardy purposes." *Id.* This, in the Court's view, the Government in this case failed to do.

What emerges from the Connecticut and Maine indictments and the supporting evidence is what can be characterized as the Padilla conspiracy. The common elements of the Padilla conspiracy are (1) the location of the source of the drugs, Waterbury, Connecticut; (2) the location of the drug distribution, the state of Maine, particularly the area from Bangor to Eastport, (3) the types of drugs, heroin and crack cocaine, (4) the interval, from January 1, 2015 through on or about September 1, 2017, (5) the centrality of Luis Padilla as a major, if not the major figure in the conspiracy, and (6), the participation of Damian Perry as a co-conspirator. If these common elements were not present, for example if the drugs were marijuana and methamphetamine in one indictment and crack cocaine and heroin in the other, the conspiracies would be different. Viewed through these criteria, the Court concludes that both the Maine and Connecticut indictments charge Mr. Padilla with participation in the same conspiracy, the Padilla conspiracy.

Next, as the First Circuit acknowledged in *Garcia-Rosa*, "the government bears a difficult burden in proving that two conspiracies are distinct." *Id.* But, as in *Garcia-*

*Rosa*, here, the "government's predicament. . . is of its own making, stemming from its decision" to indict Mr. Padilla for the same conspiracy in two different districts. *Id.* Accordingly, the Court grants Mr. Padilla's motion to dismiss on double jeopardy grounds.

### F.   Sealing

On February 19, 2019, Mr. Padilla filed a motion to seal exhibits in support of his motion to dismiss. *Mot. to Seal Exs.* (ECF No. 203).  On February 20, 2019, the Court granted the order on a temporary basis, subject to the Court's further order, "to allow the parties to further develop the case for and against sealing, and, if sealing is granted, the length of time such sealing should be in effect." *Min. Entry* (ECF No. 205).  Neither party has provided the Court with additional briefing regarding the issue of sealing the exhibits.  The record will remain sealed for a period of fourteen days.  If neither party submits additional argument regarding its position on Mr. Padilla's initial request to seal, the Court will order the exhibits unsealed.

## IV.   CONCLUSION

The Court GRANTS Luis Padilla's Renewed Motion to Dismiss (ECF No. 200).

This order will remain SEALED until fourteen days from the date of its entry on the docket, during which time the parties may further develop the case for and against continued sealing of this order and of the Defendant's Additional Attachments re Renewed Motion to Dismiss (ECF No. 204), and if sealing is granted, the length of time such sealing should be in effect.  If no further briefs are filed within in the allotted time, this order will be unsealed.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of April, 2019